UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,                       No. 1:15-cr-04

            v.                         Hon. Janet T. Neff
                                     United States District Judge

FLETCHER LEE SALAZAR,

            Defendant.

_____/

## UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits this sentencing memorandum to assist the Court in imposing sentence on the defendant.  The Court should deny the defendant the reduction for acceptance of responsibility under United States Sentencing Guidelines § 3E1.1 and increase his offense level for obstruction of justice under § 3C1.1 based on telephone calls that the defendant made while in jail, in which he attempted and conspired to intimidate and retaliate against people he believed to be witnesses or informants against him.  On some of those calls, the defendant spoke with his sister, Takia Salazar, about retaliating against a particular individual ("Victim 1").  On September 30, 2015, Takia did in fact attack Victim 1, and during one of those attacks—recorded on video—she made clear that she was doing so because of her belief that Victim 1 had informed on her brother.

I.      **BACKGROUND**

      A.      **The Offense Conduct**

The Presentence Investigation Report ("PSR") prepared by the probation office details the offense conduct involved in this case; the United States recites only a brief summary here.  In November 2014, the defendant fled from a vehicle in which police later recovered a

semiautomatic weapon with an obliterated serial number and an extended magazine.  In January 2015, a grand jury indicted the defendant for the crimes of being a felon in possession and possessing a weapon with an obliterated serial number.  A warrant was issued for his arrest in connection with the federal charges, and he was also wanted as a parole absconder.

At the time of his arrest on January 26, 2015, in a room adjacent to the one where he was found, officers located a box of ammunition containing 9mm rounds made by two manufacturers—the same manufacturers who made the rounds in the semiautomatic weapon recovered from the car.  The grand jury returned a superseding indictment, adding the charge of being a felon in possession of that ammunition.

On April 29, 2015, the defendant pled guilty to that third count.  In the plea agreement filed the same day, the government agreed to dismiss the remaining counts of the superseding indictment at the time of sentencing.  The government further agreed not to oppose the defendant's request for acceptance of responsibility and to move for an additional one-point reduction under § 3E1.1(b) in the event the Court awarded the two-point reduction for acceptance, but the government reserved the right to oppose a reduction for acceptance if it became aware of information, after the date of the plea, that was inconsistent with the commentary to § 3E1.1.

### B.      Obstruction of Justice

Since the defendant was taken into custody in January, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has monitored telephone calls placed by the defendant from the jail.  Some of those calls are summarized in Paragraphs 41-56 of the PSR.  There is no dispute about the accuracy of those summaries.

Paragraphs 43-46, 48, 50, 53, and 55 relate to the charges that were brought and then dismissed in the related case.[1]  The defendant conspired with his sister, Takia Salazar, to retaliate against Victim 1, who the defendant believed to be responsible for his January 26 arrest and subsequent conviction.  The jail calls demonstrate this belief and his intent.

On May 1, 2015, the defendant told Takia, "The bitch, [Victim 1] told on me."  He also said, "The only reason they know I was at the house was because of her tellin' ass cousin [Victim 1] bitch ass."  (PageID.103.)

On May 20, 2015, Takia told the defendant, again during a recorded call, "I want to put some pressure on people but I can't, so it fucks with me and I get to see muthafuckas walkin' past and shit and can't put no pressure on them."  The defendant then clarified that they were talking about Victim 1.  The defendant replied, "Don't worry about it you'll be able to get a hold to her.  I get sentenced in September so after that you do what the fuck you want to."  (PageID.103-04.)

On September 30, 2015—two days after the defendant was supposed to have been sentenced, (PageID.85)—Victim 1 was attacked by Takia.  The government will submit the videos of the attacks for *in camera* inspection along with this sentencing memorandum.  *See* Exs. A, B.  Exhibit A is a surveillance video recorded on September 30 at a Ruby Mart gas station in Muskegon Heights.  Exhibit B is a video, uploaded to Facebook, of a second attack the same day on Seventh Street in Muskegon Heights.  On this latter video, starting at approximately the 2:20

---

[1]  On October 14, 2015, a federal grand jury indicted the defendant and Takia Salazar with respect to some of the conduct contained in the jail calls.  *See* Case No. 1:15-cr-185.  A superseding indictment was returned on November 12, 2015.  On January 19, 2016, the government moved to dismiss that case without prejudice.  In its brief in support of its motion to dismiss, the government explained that part of the reason for the motion to dismiss was that the defendant would be held accountable for the conduct charged in the superseding indictment at sentencing in the instant matter.  (*See* 1:15-cr-185 PageID.139.)  The Court granted the motion, dismissing the indictment and superseding indictment without prejudice.

mark, Takia can be heard yelling at Victim 1, saying that Victim 1 told on Takia's "brother" and every time that Takia sees Victim 1, she (Takia) is going to put "pressure" on Victim 1.

Some of these jail calls and related conduct are described in greater detail in the government's trial brief and motion in limine in the related case, which are incorporated here by reference.  (*See* 1:15-cr-185 PageID.94-109, 124-31.)

The defendant's obstructive conduct using the jail's telephone was not limited to Victim 1.  The information summarized in Paragraphs 49, 50-52, and 54 of the PSR generally relates to the defendant's attempts to obtain and release certain "paperwork" to publicly identify people who he believed provided information to the government in connection with his case, specifically Victim 2 and Victim 3.  The calls demonstrate that the defendant believed (mistakenly or not) that Victim 2 and Victim 3 were government informants or would have been witnesses against the defendant had the case been tried.[2]

For example, the day after he pled guilty, the defendant talked with an unidentified female.  He stated: "I got some paperwork back.  I can talk now.  I already pled guilty."  He talked about trying to get additional paperwork to find out who told on him.  The defendant said that "[Victim 2] told on me."  The following day the defendant reiterated the same point on a call with Takia.  (PageID.102-03.)

In May, the defendant spoke with his friend, Matt Foster.  On one of those calls, the defendant called a woman, Tiffany (last name unknown), who conferenced in Foster.  Foster was on Seventh Street in Muskegon Heights at the time.  Foster placed the defendant on speaker phone, at which time the defendant told a crowd of people, including Victim 2, that Victim 2 was

---

[2]  In order to protect government informants and witnesses in this and other cases, the government does not intend to disclose what, if any, information was provided by any particular individual, nor if any individual would have been called as a witness at trial, save for the information that has already been disclosed regarding Victim 1 in connection with the prosecution in the related case.

cooperating with the police.  Despite Victim 2's denial, the defendant told Foster to review the defendant's "paperwork" to see what Victim 2 said.  In a later three-way call with Tiffany and Foster, the defendant speculated that another person, Victim 3, was a government informant. (PageID.103.)

In June 2015, the defendant and his brother talked about how Foster had the defendant's "paperwork" and Foster told the defendant's brother that Victim 2 "told" on the defendant.  The defendant's brother said, "I can't wait to bump into [Victim 2], I got something for his ass." (PageID.104.)

## II.   THE DEFENDANT OBSTRUCTED JUSTICE BY INTIMIDATING AND RETALIATING AGAINST POSSIBLE INFORMANTS AND WITNESSES, AND ATTEMPTING TO DO SO, AND THEREFORE HE HAS NOT ACCEPTED RESPONSIBILITY

This conduct amounts to obstruction of justice.  Guidelines § 3C1.1 provides in relevant part for an increase of the offense level by two levels if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instance offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct."  The commentary explains that the guideline should be applied where a defendant attempts to threaten, intimidate, or otherwise unlawfully influence a witness, USSG § 3C1.1 n.4(A), or where there is "other conduct prohibited by obstruction of justice provisions under Title 18," *id.* n.4(I).  "[T]he defendant is accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully cause."  *Id.* n.9 (citing USSG § 1B1.3(a)(1)(A)).  The Sixth Circuit has affirmed a finding of obstruction based in part on telephone calls made by the defendant while awaiting trial.  *See United States v. Fisher*, 572 F. App'x 323, 324 (6th Cir. 2014).

Title 18 U.S.C. § 1513(b)(2) prohibits knowingly engaging in conduct that caused or threatened bodily injury with intent to retaliate for information relating to the possible commission of a federal offense provided to a law enforcement officer.  *See United States v. Denham*, 663 F. Supp. 2d 561, 563-64 (E.D. Ky. 2009) (citing *United States v. Draper*, 553 F.3d 174, 180 (2d Cir. 2009)).  The statute also prohibits conspiracy to commit the same offense.  18 U.S.C. § 1513(f).  The grand jury returned the indictment against the defendant in the related case for these § 1513 offenses.

The jail calls and subsequent attack by Takia evince the defendant conspired to commit and aided and abetted the commission of an obstruction-of-justice offense as defined in Title 18.  Of course, a statutory offense is not required for the Court to decline to award the defendant credit for acceptance of responsibility and to assess a penalty for obstruction under the Guidelines.  Here, the defendant directed his sister to attack Victim 1, based on his belief that Victim 1 had provided information to law enforcement; and, Takia acted on that direction.  Therefore, the Court should find that the defendant obstructed justice with respect to Victim 1.

But the defendant's obstructive conduct did not end with his malice toward Victim 1.  He had multiple conversations with his associates in which he accused Victim 2 of cooperating with the police.  In one of those conversations, he had one associate, Foster, put him on speakerphone so that he could publicly confront Victim 2 about his supposed cooperation in front of a group of Muskegon Heights residents.  The jail calls disclose the defendant's intent to intimidate and retaliate against Victim 2, which meets the commentary's criterion for a finding of obstruction: he intimidated someone who he believed to be a government witness or informant.  Even if Victim 2 did not provide information or would not have been a witness, the defendant's belief that he did or would have been makes the defendant liable for the obstruction under an attempt

theory.  *See, e.g.*, *United States v. Kirk*, 82 F. App'x 831, 833 (4th Cir. 2003) (applying the enhancement where the defendant mistakenly believed that his cousin was an informant and assaulted him as a result); *United States v. Lagasse*, 87 F.3d 18, 24 (1st Cir. 1996) (applying the enhancement under an attempt theory where the target of intimidation was attacked after conviction and prior to sentencing and "did not, or even could not have, contributed anything to the sentencing process").

As a consequence of the defendant's obstruction, he should lose any credit for acceptance of responsibility.  The commentary to § 3E1.1 instructs that "an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."  USSG § 3E1.1 n.4.  In earlier briefing, the defendant has asserted that his case is extraordinary.  (PageID.132-34.)  This is not an extraordinary case.  The defendant's obstructive conduct on which the government is relying, including some of the direction to attack Victim 1, the attack on Victim 1, the phone call on which he confronted Victim 2, and his speculation about Victim 3 occurred after he pled guilty.  Thus, the defendant's circumstance is distinguishable from the cases he cites as "extraordinary" where the defendant initially made some effort to obstruct justice but then accepted responsibility, pled guilty, and ceased all obstructive efforts.  And as noted in the guideline, obstruction can occur after an adjudication of guilt, as it did here.[3]

---

[3]    In the plea agreement, the government reserved the right to object to credit for accepting responsibility if the government "subsequently learn[ed] of conduct by the defendant that is inconsistent with the criteria set forth in the in the Commentary to Section 3E1.1." (PageID.45.) The conduct summarized above post-dates the entry of the defendant's plea and therefore permits the government to take this position.

7

### III.    CONCLUSION

The PSR properly assessed the five-level enhancement corresponding to a loss of three levels under § 3E1.1 and an increase of two levels under § 3C1.1.[4]

Respectfully submitted,

PATRICK A. MILES, JR.
United States Attorney

Dated: February 17, 2016                    /s/ Justin M. Presant
JUSTIN M. PRESANT
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan  49501-0208
(616) 456-2404

---

[4] Some Members of Congress have proposed legislation that would reduce the mandatory minimum prescribed by 18 U.S.C. § 924(e) from 15 years to 10 years, and would further make that reduction retroactive to some already imposed sentences.  *See* S. 2123, 114th Cong. § 105 (2015).  The government respectfully submits that the Court consider making a record of what sentence the Court would impose if bound only by a 10-year minimum, in the interest of efficiency, should the law change.